# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**GLENN BURTON, JR.,**
   **Plaintiff,**

  **v.**         **Case No. 07-C-0303**

**AMERICAN CYANAMID CO., et al.,**
   **Defendant.**

---

**RAVON OWENS,**
   **Plaintiff,**

  **v.**         **Case No. 07-C-0441**

**AMERICAN CYANAMID CO., et al.,**
   **Defendant.**

---

**CESAR SIFUENTES,**
   **Plaintiff,**

  **v.**         **Case No. 10-C-0075**

**AMERICAN CYANAMID CO., et al.,**
   **Defendant.**

---

**ERNEST GIBSON,**
   **Plaintiff,**

  **v.**         **Case No. 07-C-0864**

**AMERICAN CYANAMID CO., et al.,**
   **Defendant.**

---

**MANIYA ALLEN, et al.,**
   **Plaintiff,**

  **v.**         **Case No. 11-C-0055**

**AMERICAN CYANAMID CO., et al.,**
   **Defendant.**

---

**DEZIREE VALOE, et al.,**
       **Plaintiffs,**

       **v.**                          **Case No. 11-C-0425**

**AMERICAN CYANAMID CO., et al.,**
       **Defendant.**
_____

**DIJONAE TRAMMELL, et al.,**
       **Plaintiff,**

       **v.**                          **Case No. 14-C-1423**

**AMERICAN CYANAMID CO., et al.,**
       **Defendant.**
_____

## <u>DECISION AND ORDER</u>

The approximately 170 plaintiffs in these actions allege that they suffered injuries from exposure to white lead carbonate ("WLC"), a dry white powder historically used as the pigment in many lead-based paints, and that the defendants are liable for their injuries under the risk-contribution theory announced by the Wisconsin Supreme Court in *Thomas ex rel. Gramling v. Mallett*, 285 Wis.2d 236 (2005). The plaintiffs allege that they were exposed to the paint in the 1990s and early 2000s, while they were children living in homes in Milwaukee, Wisconsin, that had lead-based paint on their surfaces. On March 2, 2022, I entered a final order that applied to all cases and directed entry of judgment for all defendants. Before me now are two post-judgment motions: (1) a motion filed by defendant E. I. du Pont de Nemours and Company ("DuPont") to correct a mistake pursuant to Federal Rule of Civil Procedure 60(a), and (2) the plaintiffs' motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e).

2

## I. BACKGROUND

The general facts and procedural history of these cases are described in detail in my prior order. *See Burton v. American Cyanamid Co.*, __ F. Supp. 3d __, 2022 WL 623895 (E.D. Wis. March 2, 2022). Because the procedural history is relevant to the pending motions, I will summarize it here.

These cases began arriving in federal court in 2007, when the defendants removed the case of *Burton v. American Cyanamid Co.* (which became E.D. Wis. Case No. 07-C-0303) to this court and it was assigned to me. Over the next few years, additional cases were either filed or removed to this court and assigned to me as related cases. In one of those cases, *Allen v. American Cyanamid Co.*, No. 11-C-0055, over 160 individuals joined together as plaintiffs and filed a single complaint against the manufacturers of white lead carbonate. By 2016, all cases were assigned to me and being administered jointly as a single litigation, even though the separate case numbers were not formally consolidated for all purposes under Federal Rule of Civil Procedure 42(a). The plaintiffs were all represented by the same counsel and waged a coordinated campaign.

In April 2016, I entered a case management order under which the claims of three plaintiffs—Glenn Burton, Ravon Owens, and Cesar Sifuentes—were to be prepared for trial first. These are the "first wave" plaintiffs. In 2018, the defendants filed motions for summary judgment on the claims of the first-wave plaintiffs. Among other things, the defendants argued that the plaintiffs could not establish that the defendants had a duty to warn consumers and users of lead-based paint about the dangers of white lead carbonate. The defendants argued that the plaintiffs' inability to establish a duty to warn required entry of summary judgment on the plaintiffs' negligence and strict-liability claims.

3

In an order entered in September 2018, *see Burton v. American Cyanamid*, 334 F. Supp. 3d 949, 961–67 (E.D. Wis. 2018), I concluded that the defendants had no duty to warn for purposes of the negligence claims because the defendants had reason to believe that consumers in the 1990s and later (*i.e.*, consumers in the position of the plaintiffs' and their caregivers) were aware of the dangers of lead-based paint. I therefore granted summary judgment to the defendants on the plaintiffs' negligent failure to warn claims. However, for purposes of strict liability, I concluded that the existence of a duty to warn depended on the knowledge of consumers who consumed and used lead-based paint prior to 1950. I concluded that, because a jury could reasonably find that consumers of that era were not aware of the dangers of lead-based paint, the defendants were not entitled to summary judgment on the strict-liability claims.

In May 2019, a trial was held on the claims of the first-wave plaintiffs against American Cyanamid, DuPont, the Sherwin-Williams Company, Armstrong Containers, Inc., and Atlantic Richfield Company. During the trial, I dismissed American Cyanamid from the case for lack of personal jurisdiction. I would later dismiss American Cyanamid from all cases for lack of personal jurisdiction, reasoning that all plaintiffs in all cases were bound by the outcome of the first-wave claims against American Cyanamid under the doctrine of issue preclusion. (ECF No. 364 in No. 11-C-0055.) The jury found three of the four remaining defendants (DuPont, Sherwin-Williams, and Armstrong) liable and awarded the plaintiffs $2 million each. The jury found that Atlantic Richfield was not liable. The three defendants found liable appealed.

While the appeal in the first-wave cases was pending, the defendants filed motions for summary judgment on the claims that had been chosen to be tried second. These

4

"second wave" claims were those of Latoya Cannon, D'Angelo Thompson, Tyann McHenry, and Dijonae Trammell, who were plaintiffs in the cases *Allen v. American Cyanamid Co.*, No. 11-C-0055, and *Trammell v. American Cyanamid Co.*, No. 14-C-1423. In their motions for summary judgment, the defendants repeated their arguments concerning the duty to warn that they had made during the first-wave cases. In response, the plaintiffs argued that I should reach the same result in the second-wave cases as I did in the first: they conceded that the defendants were entitled to summary judgment on their claims for negligent failure to warn but argued that the defendants had a duty to warn for purposes of strict liability because consumers in the 1950s and earlier were not aware of the dangers of lead paint. In my decision on the motion for summary judgment in the second-wave cases, I reiterated my conclusion from the first-wave cases that, given the public knowledge of the dangers of lead paint in the 1990s and early 2000s, the plaintiffs were foreclosed from pursuing negligence claims that relied on a duty-to-warn theory. *See Allen v. American Cyanamid*, 527 F. Supp. 3d 982, 996–97 (E.D. Wis. 2021). However, I continued to draw a distinction between the duty to warn under negligence and the duty to warn under strict liability. Thus, as I did in the first-wave cases, I allowed the plaintiffs to proceed on their strict-liability failure-to-warn claims based on the possibility that consumers in the period 1900 to 1950 were unaware of the dangers posed by lead-based paint. *See id.* at 995–96.

In April 2021, shortly after I decided the motions for summary judgment on the claims of the second-wave plaintiffs, the Seventh Circuit issued its decision in the appeal involving the claims of the first-wave plaintiffs. *See Burton v. E.I. du Pont de Nemours & Co.*, 994 F.3d 791 (7th Cir. 2021). In that decision, the court rejected my conclusion that

5

the legal standard governing claims for failure to warn in the strict-liability context is different than the standard governing claims for failure to warn in the negligence context. The court found that I "legally erred in finding that the defendants had a duty to warn for purposes of strict liability after ruling at summary judgment that they had no duty to warn the plaintiffs on their negligence claims." *Id.* Further, the court noted, the plaintiffs did not appeal my ruling that the defendants had no duty to warn for purposes of the negligence claims. *Id.* The court thus held that my ruling on the negligence claims "compel[led] judgment as a matter of law for Sherwin-Williams and Armstrong on the strict liability claims." *Id.*

The Seventh Circuit made other rulings on appeal, most of which I need not discuss here. However, one additional ruling is relevant. During summary judgment in the first wave, I concluded that although the defendants were entitled to summary judgment on the plaintiffs' negligent failure to warn claims, the plaintiffs could still pursue a general negligence claim against all defendants (one that did not depend on the existence of a duty to warn or other product defect). *Burton*, 334 F. Supp. 3d at 961. The Seventh Circuit determined that this ruling was erroneous and that, under Wisconsin law, a negligence claim in the products liability context requires proof of a product defect. *Burton*, 994 F.3d at 817–20. The court held that, because the plaintiffs had not asserted the existence of a product defect other than a lack of warnings, my conclusion at summary judgment that the defendants owed no duty to warn to the plaintiffs for purposes of their negligence claims compelled entry of judgment as a matter of law on all negligence claims. *Id.* at 819–20.

6

The bottom line of the appeal was that the judgments in favor of the first-wave plaintiffs were reversed and the cases were remanded for further proceedings. The court directed entry of judgment as a matter of law to Sherwin-Williams on all claims. The court directed entry of judgment as a matter of law to Armstrong on the strict-liability claims and granted it a new trial on the negligence claims. Finally, the court directed that DuPont was entitled to a new trial on both the negligence and strict-liability claims.

After the Seventh Circuit remanded the first-wave cases, the defendants filed new motions for summary judgment based on the Seventh Circuit's rulings, which are now binding under the mandate rule, the doctrine of law of the case, and/or vertical stare decisis. The defendants filed their motion in all cases involved in this coordinated proceeding, not just in the cases involving the claims of the first-wave plaintiffs. I granted those motions in my order of March 2, 2022.

My March order placed each plaintiff into one of four categories: (1) the first-wave plaintiffs (those plaintiffs whose claims had gone to trial and been subject to an appeal); (2) the second-wave plaintiffs (those plaintiffs whose claims had been addressed at summary judgment during the second wave); (3) the plaintiffs who were formal parties to cases in which claims had been subject to motions for summary judgment (the "remaining *Allen* and *Trammell*" plaintiffs)[1]; and (4) the plaintiffs who were not named parties to cases in which claims had been formally adjudicated but whose claims had been part of this coordinated litigation (the *Valoe* and *Gibson* plaintiffs).[2] For each category of plaintiffs,

---

[1] There are more than 150 plaintiffs in this category.

[2] There are three plaintiffs in this category: Ernest Gibson, Deziree Valoe, and Detareion Valoe.

7

my basis for entering judgment for the defendants varied. First, I ruled that, in the first-wave cases, the remaining defendants were entitled to summary judgment because the first-wave plaintiffs had not opposed the defendants' post-appeal motions for summary judgment. Second, I ruled that, in the second-wave cases, the defendants were entitled to judgment as a matter of law on all claims based on the combined effect of the Seventh Circuit's decision in *Burton* and my conclusion at summary judgment in the second wave that the defendants had no duty to warn consumers in the 1990s and later of the dangers of lead paint. Third, I ruled that the remaining *Allen* and *Trammell* plaintiffs were bound, through the doctrine of law of the case, by my conclusion at summary judgment in the second wave that the defendants had no duty to warn consumers in the 1990s and later of the dangers of lead paint. Fourth, I ruled that the *Valoe* and *Gibson* plaintiffs were bound, through the doctrine of issue preclusion, by the same conclusion. Based on these rulings, I directed entry of final judgment on the claims of all plaintiffs.

The post-judgment motions filed by DuPont and the plaintiffs point out that I made a mistake in thinking that the first-wave plaintiffs had not opposed the defendants' post-appeal motions for summary judgment in the first-wave cases. Due to a quirk in the way in which the motions and the parties' briefs were filed in those cases, the court's electronic filing system indicated that no brief in opposition to the defendants' motions was filed. However, the plaintiffs had filed such a brief, which was available through the electronic docket. (*See, e.g.,* ECF No. 1848 in 07-C-0303.) Thus, I will reconsider the part of my March order that grants the motions for summary judgment filed by DuPont and Armstrong in the first-wave cases on the ground that they are unopposed. In Part II.A.,

8

below, I will reconsider those motions in light of the brief in opposition (and other supporting materials) filed by the first-wave plaintiffs.[3]

The plaintiffs' motion for reconsideration also argues that I erred in applying law of the case to the remaining *Allen* and *Trammell* plaintiffs and that I erred in applying issue preclusion to the *Valoe* and *Gibson* plaintiffs.[4] I address this part of the motion for reconsideration in Part II.B., below.

## II. DISCUSSION

### A. Reconsideration of First-Wave, Post-Appeal Motions for Summary Judgment Filed by Armstrong and DuPont

In the brief I overlooked, the first-wave plaintiffs advanced two arguments: (1) I should revisit my prior rulings that Armstrong and DuPont[5] were entitled to summary judgment on the claims for negligent failure to warn; and (2) I should not automatically

---

[3] Pursuant to the Seventh Circuit's mandate, I must grant judgment as a matter of law to Sherwin-Williams on all claims. Thus, my mistake in overlooking the plaintiffs' opposition materials does not affect the judgments in the first-wave cases insofar as they apply to Sherwin-Williams.

[4] The second-wave plaintiffs do not seek reconsideration of the parts of the March 2, 2022 order that applies to them.

[5] In my original decision on the motions for summary judgment in the first-wave cases, I granted summary judgment on the issue of negligent failure to warn in the context of motions for summary judgment filed by Sherwin-Williams and Armstrong. *See Burton*, 334 F. Supp. 3d at 961. Although DuPont did not file a motion for summary judgment on this issue, my ruling was based on reasoning and evidence that applied to all defendants and therefore encompassed DuPont, as well. *See* Pl. Resp. to DuPont Prop. Findings of Fact ¶ 2, ECF No. 1849 in 07-C-0303 (admitting that "in September 2018 this Court granted summary judgment on [the plaintiffs'] negligent failure to warn claims"). After I made that ruling, the first-wave plaintiffs stopped pursuing negligent failure to warn claims against DuPont. At trial, they did not request that I instruct the jury that it could find DuPont liable for negligence based on a failure-to-warn theory. *See* First-Wave Trial Tr. at 6856:23–26 (instructing jury "to determinate separately for each defendant whether the defendant was negligent, other than for failure to warn"). Thus, DuPont has been granted summary judgment on the first-wave plaintiffs' claims for negligent failure to warn.

apply my prior rulings regarding the absence of a duty to warn in the negligence context to the first-wave plaintiffs' strict-liability claims against DuPont; instead, I should examine whether the plaintiffs' current evidence—which was not in the record during the original round of summary-judgment briefing—presents a genuine factual dispute over whether consumers in the 1990s and later were fully aware of the dangers of paint containing white lead carbonate. I consider these arguments in turn.

### 1. Reconsideration of negligent failure to warn ruling

Initially, I must decide whether the Seventh Circuit's decision on appeal deprives me of authority to revisit my grant of summary judgment to Armstrong on the first-wave plaintiffs' claims for negligent failure to warn. This question arises because the doctrine of law of the case that is a corollary of the mandate rule generally prohibits me from reconsidering on remand an issue "expressly or impliedly decided" by the court of appeals. *See Delgado v. United States Dep't of Justice*, 979 F.3d 550, 557 (7th Cir. 2020) (quoting *United States v. Adams*, 746 F.3d 734, 744 (7th Cir. 2014)). On appeal, the Seventh Circuit expressly decided that Armstrong was entitled to judgment as a matter of law on the plaintiffs' strict-liability claims. The court's ruling was based on my grant of summary judgment to Armstrong on the negligent failure to warn clams. *Burton*, 994 F.3d at 823 ("[T]he court legally erred in finding that the defendants had a duty to warn for purposes of strict liability after ruling at summary judgment that they had no duty to warn the plaintiffs on their negligence claims."). The court noted that my ruling that the defendants had no duty to warn for purposes of the negligence claims "compel[led] judgment as a matter of law for . . . Armstrong on the strict liability claims." *Id.* However, the court expressly noted that the plaintiffs had not appealed my ruling on the lack of a

10

duty to warn for purposes of the negligence claim, *id.*, and thus it did not decide whether my ruling was correct—either expressly or impliedly. Accordingly, I do not believe that the law-of-the-case doctrine that is a corollary to the mandate rule prevents me from revisiting the question of whether Armstrong had a duty to warn for purposes of the plaintiffs' negligence claims.

A related question is whether a different aspect of the doctrine of law of the case applies. Under this aspect, "a ruling by the trial court, in an earlier stage of the case, that could have been but was not challenged on appeal is binding in subsequent stages of the case." *Schering Corp. v. Ill. Antibiotics Co.*, 89 F.3d 357, 358 (7th Cir. 1996). This aspect of the rule potentially applies because the plaintiffs did not challenge on appeal my ruling that the defendants did not have a duty to warn for purposes of a negligence claim. However, this aspect has "limited applicability" when the initial challenge to the trial court's ruling would have been by the appellees. *Id.* That is so because, in general, "the failure of an appellee to have raised all possible alternative grounds for affirming the district court's original decision, unlike an appellant's failure to raise all possible grounds for reversal, should not operate as a waiver." *Id.* This principle is based on the notion that an appellee, who is allowed to file only a single brief on appeal, should not be required to respond to both the appellant's arguments and arguments made by the district court in the unchallenged ruling. *See Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 740–41 (D.C. Cir. 1995) (cited approvingly by the Seventh Circuit in *Schering*, 89 F.3d at 358). The limited circumstance under which the appellee's failure to challenge a trial court's ruling on appeal will operate as a waiver is when that ruling pertains to a ground for affirmance that was actually argued. *Schering*, 89 F.3d at 358–59. In the present case,

11

during the appeal in the first-wave cases, the plaintiffs did not raise a ground for affirmance that depended on my negligent failure to warn ruling. Indeed, they did not pursue their negligent failure to warn claim on appeal at all. Thus, I conclude that this aspect of the law-of-the-case doctrine does not prevent me from reconsidering my negligent failure to warn ruling.

Having concluded that I have the power to reconsider my negligent failure to warn ruling, I turn to the question of whether I should reconsider it. Federal Rule of Civil Procedure 54(b) provides that any order or decision "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."[6] Although this rule grants me the power to reconsider any nonfinal order, *see Cameo Convalescent Ctr., Inc. v. Percy*, 800 F.2d 108, 110 (7th Cir. 1986), and although the summary-judgment order at issue here is nonfinal for purposes of Rule 54(b), reconsideration is a power to be used sparingly and only in appropriate circumstances. As the Seventh Circuit has stated, "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996).

The first-wave plaintiffs argue that I should reconsider my grant of summary judgment on negligent failure to warn because there is evidence that consumers in the

---

[6] In the brief I overlooked, the plaintiffs contend that I should reconsider my grant of summary judgment on negligent failure to warn under Federal Rule of Civil Procedure 60(b)(6), which provides that a final order or judgment may be set aside for "any other reason that justifies relief." However, at the time this brief was filed, no final judgment or order applied to the negligent failure to warn claims against Armstrong and DuPont. The Seventh Circuit had reversed the final judgment entered after trial, and I had not yet entered a new judgment. Thus, the appropriate reconsideration standard is that which applies to a district court's interlocutory decisions.

1990s and later were not aware of all the pathways by which children can ingest or inhale lead paint. Specially, the plaintiffs point to evidence indicating that, although consumers were generally aware that children should not eat lead paint chips, they were unaware that deteriorating lead paint was also dangerous because it produced invisible dust that children could either inhale or ingest through ordinary hand-to-mouth activities. The plaintiffs describe the dangers of lead dust as a hidden danger that the defendants had a duty to warn about, even if they had no duty to warn about the dangers of lead chips.

In making this argument, the plaintiffs do not dispute that I applied the correct legal standards during the original round of summary judgment. Rather, they concede that, under Wisconsin law, a manufacturer has no duty to warn about a danger if the defendant has reason to believe that the consumer will realize its dangerous condition. *See Strasser v. Transtech Mobile Fleet Serv., Inc.*, 236 Wis. 2d 435, 461 (2000). Instead, the plaintiffs argue that the evidence to which they now point creates a genuine factual dispute over whether the defendants had reason to believe that consumers would realize the dangers posed by lead dust. The problem with this argument is that, as explained below, the plaintiffs did not present the factual materials on which they now rely to the court during proceedings on the original motion for summary judgment.

All the factual materials cited in the plaintiffs' motion for reconsideration concerning consumer ignorance of the dangers of lead dust were submitted to the court *after* I had already granted summary judgment on the claims for negligent failure to warn. The plaintiffs mentioned none of those materials when they opposed the defendants' original motions for summary judgment. During the original round of briefing, both Sherwin-Williams and Armstrong argued that the plaintiffs could not show that they had reason to

13

know that consumers and users of lead-based paint were unaware of its dangerous condition. (*Burton* ECF No. 572 at 9 of 15 & No. 614 at 10 (each citing *Strasser* for this proposition).) In their response to Sherwin-Williams' motion, the plaintiffs argued that such purchasers and users of lead paint were uninformed of the dangers present, but the plaintiffs did not reference the dangers of lead dust specifically or point to evidence concerning the level of consumer knowledge in the 1990s or later. (*Id.* ECF No. 796 at 7.) In its reply brief, Sherwin-Williams emphasized that the plaintiffs had failed to produce evidence indicating that the plaintiffs' caregivers were unaware of the dangers of lead paint, and it pointed to its own evidence indicating that the plaintiffs' caregivers, and other consumers in the 1990s, were aware of the dangers. (*Id.* ECF No. 987 at 11–12 of 20.) The evidence supplied by Sherwin-Williams was thus the only evidence in the record concerning the knowledge of the plaintiffs and their caregivers about the dangers of lead paint, and such evidence did not suggest that lead dust was a unique danger of which consumers were unaware. Based on this record, I concluded that the plaintiffs could not show that the defendants had reason to believe that the plaintiffs or their caregivers would not realize that deteriorating lead paint was dangerous. *Burton*, 334 F. Supp. 3d at 961. Accordingly, my original decision, which was based on the record compiled at the time and on the arguments that the plaintiffs actually made at the time, was correct. There was no manifest error of law or fact.

Although the plaintiffs now present new evidence regarding consumer ignorance of the dangers of lead dust in the 1990s and later, that evidence does not qualify as newly discovered evidence for purposes of a motion for reconsideration. Such a motion cannot "be employed as a vehicle to introduce new evidence that could have been adduced

14

during the pendency of the [original] summary judgment motion." *Caisse Nationale*, 90 F.3d at 1269. To support a motion for reconsideration based on newly discovered evidence, the moving party must show not only that the evidence was newly discovered or unknown to it until after the original proceeding, but also that it could not with reasonable diligence have discovered and produced such evidence during the original proceeding. *Id.* The first-wave plaintiffs do not argue that the evidence they now present about lead dust was unknown to them during prior proceedings or that they could not with reasonable diligence have discovered or produced that evidence when opposing the defendants' original motions for summary judgment. Accordingly, I will not reconsider my original grant of summary judgment to the defendants on the issue of whether they had a duty to warn for purposes of the plaintiffs' negligence claims.

### 2.     Claims for strict liability against DuPont

Having refused to reconsider my grant of summary judgment to the defendants on the plaintiffs' claims for negligent failure to warn, I must apply that same grant of summary judgment to the issue of whether the defendants had a duty to warn for purposes of strict liability. This is so as a matter of vertical stare decisis. On appeal, the Seventh Circuit held that it is a "legal error" for a district court to find that a manufacturer has a duty to warn for purposes of strict liability after ruling at summary judgment that the manufacturer had no duty to warn for purposes of a negligence claim. *Burton*, 994 F.3d at 823. In the words of the Seventh Circuit, a "ruling that the defendants had no duty to warn for purposes of the negligence claims . . . compels judgment as a matter of law [for the defendants] on the strict liability claims." *Id.* Because I previously granted summary judgment to DuPont on the issue of whether it had a duty to warn for purposes of the

plaintiffs' negligence claims, I must also grant summary judgment to DuPont on the strict-liability claims.

### 3. Conclusion regarding first-wave cases

Because I previously granted summary judgment to Armstrong and DuPont on the issue of duty to warn for purposes of the plaintiffs' negligence claims and will not reconsider that ruling, and because the Seventh Circuit has held that such a ruling compels entry of judgment as a matter of law on the strict-liability claims, I will again grant Armstrong's and DuPont's post-appeal motions for summary judgment on the claims against them that were remanded by the Seventh Circuit. The previously entered judgments in the first-wave cases shall stand.[7]

## B. Reconsideration of Judgments Based on Law of the Case and Issue Preclusion

The remaining *Allen* and *Trammell* plaintiffs and the *Gibson* and *Valoe* plaintiffs seek reconsideration of the part of my March 2, 2022 order concluding that they are bound by my grant of summary judgment to the defendants on the second-wave plaintiffs' claims for negligent failure to warn and strict liability through the doctrines of law of the case and issue preclusion. Unlike with the first-wave plaintiffs' motion for reconsideration, I fully considered these plaintiffs' arguments in the March 2 order. The plaintiffs, however, allege that I clearly erred in applying law of the case and issue preclusion. Because I addressed many of the plaintiffs' arguments in my prior decision, I will not here discuss all the

---

[7] Because I am not making changes to the judgments entered in the first-wave cases, I will formally deny both DuPont's motion to correct a misstatement and the plaintiffs' motion for reconsideration.

arguments made in the motion for reconsideration. Instead, I will focus on the arguments that warrant additional discussion.

First, regarding law of the case, the remaining *Allen* and *Trammell* plaintiffs contend that they should not be regarded as parties to the same "case" as their co-plaintiffs who were part of the second wave. Among other things, they cite an unpublished case from the Sixth Circuit holding that "consolidated cases" are not the "same case" for law-of-the-case purposes. *GMAC Mortg., LLC v. McKeever*, 651 F. App'x 332, 338–39 (6th Cir. 2016). But even if this holding would be followed by the Seventh Circuit, the claims of the plaintiffs in *Allen*, and the plaintiffs in *Trammell*, respectively, were not brought in separate cases that were consolidated under Federal Rule of Civil Procedure 42(a). Instead, in each case, the plaintiffs decided to join their claims into a single action under Federal Rule of Civil Procedure 20(a). This created two "cases:" the *Allen* case and the *Trammell* case. Each case contained the claims of different plaintiffs, but each claim was not a distinct case for law-of-the-case purposes.

In any event, although I continue to believe that the remaining plaintiffs in *Allen* and *Trammell* are subject to the law of each case, I also point out that, if I am wrong, then the question would become whether those plaintiffs, like the plaintiffs in *Gibson* and *Valoe*, are bound to the same rulings via issue preclusion. *See GMAC Mortg.*, 651 F. App'x at 339–40. Here, if the *Gibson* and *Valoe* plaintiffs are bound by issue preclusion, then the remaining *Allen* and *Trammell* plaintiffs would be as well, for these groups of plaintiffs are similarly situated. If anything, the case for applying issue preclusion to the remaining *Allen* and *Trammell* plaintiffs is stronger, because they were named as formal parties to the cases in which the preclusive decision was rendered. Thus, to the extent I

17

am wrong about the scope of the doctrine of law of the case, I would alternatively reach the same result by applying the doctrine of issue preclusion.

Turning to issue preclusion, I first reiterate that because the judgments in these cases were rendered by a federal court sitting in diversity, the relevant preclusion law is that of Wisconsin's. *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). Under Wisconsin law, a two-step analysis is used to determine whether issue preclusion applies: first, the court asks whether issue preclusion can, as a matter of law, be applied; if so, the court then asks whether the application of issue preclusion would be fundamentally fair. *In re Estate of Rille ex rel. Rille*, 300 Wis. 2d 1, 19 (2007). In the first step, a court must determine "whether the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment in a previous action and whether the determination was essential to the judgment." *Id.* at 20. Where, as here, a party seeks to apply issue preclusion against a person who was not a formal party to the prior action, the first step also requires that the court determine whether the person was "in privity with or had sufficient identity of interest" with a person who was a party to that action such that applying issue preclusion would comport with due process. *Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis. 2d 210, 224 (1999). In the second step, a court considers five factors, "which are not exclusive or dispositive," in determining whether application of issue preclusion is fundamentally fair. *Rille*, 300 Wis. 2d at 20.

In their motion for reconsideration, the plaintiffs make three arguments concerning the first step. First, they contend that because the second-wave plaintiffs conceded that the defendants were entitled to summary judgment on their claims for negligent failure to

warn, the issue of whether the defendants had a duty to warn for purposes of a negligence claim was not "actually litigated." However, "[a]n issue may be 'litigated' for this purpose even though one party is passive." *Barrow v. Falck*, 11 F.3d 729, 731 (7th Cir. 1993). What matters is that the parties had "both opportunity and motive to contest" the issue. *Harris Trust & Sav. Bank v. Ellis*, 810 F.2d 700, 705 (7th Cir. 1987); *see also Rille*, 300 Wis. 2d at 22–24 (holding that an issue was actually litigated even though the court determined the issue by deciding an unopposed motion for summary judgment). During the second wave, the defendants moved for summary judgment on the plaintiffs' claims for negligent failure to warn on the ground that the plaintiffs could not show that the defendants had reason to believe that the plaintiffs or their caregivers were not already aware of the dangers of lead paint. (*See* Sherwin-Williams Br. at 4–5; ECF No. 801 in *Allen*.) The plaintiffs had the opportunity to contest this point by introducing evidence concerning the ordinary consumer's lack of knowledge of lead dust but chose not to. (Pls.' Br. in Opp. at 5 n.8, ECF No. 914 in *Allen*.) After reviewing the parties' arguments, I determined that the defendants did not have a duty to warn for purposes of a negligence claim because they had reason to believe that ordinary consumers in the position of the plaintiffs and their caregivers were aware of the dangers of lead paint. *Allen*, 527 F. Supp. 3d at 996–97. Thus, the issue was actually litigated and decided.

The plaintiffs' second argument concerning the first step is that I erred in concluding that the plaintiffs who were not in the second wave had "sufficient identity of interest" with the parties in that wave such that applying issue preclusion would comport with due process. *Paige K.B.*, 226 Wis. 2d at 224. The plaintiffs contend that I erred in relying on the Wisconsin Court of Appeals' decision in *Jensen v. Milwaukee County*

19

*Mutual Insurance Co.*, 204 Wis. 2d 231 (Ct. App. 1996), because, according to the plaintiffs, the *Jensen* court did not discuss or apply the part of first step of the issue-preclusion test that requires a sufficient identity of interest. (Br. in Supp. of Mot. to Reconsider at 20; Reply Br. at 11.) However, *Jensen* expressly held that the nonparty to the prior action had sufficient identity of interest with the party to that action. 204 Wis. 2d at 234 ("Even though Betty was not a party to the prior action, we hold that she had sufficient identity of interest in the prior action such that she was properly bound by the prior jury determination."). The plaintiffs also describe *Jensen* as an "outlier." (Br. in Supp. at 21.) However, it is a published opinion from the Wisconsin Court of Appeals that I must follow in the absence of guidance from the state's highest court, unless there is a convincing reason to predict that the state's highest court would disagree. *Smith v. RecordQuest, LLC*, 989 F.3d 513, 517 (7th Cir. 2021). Although the plaintiffs cite other decisions from the Wisconsin Court of Appeals in which it determined, under different circumstances than those present in *Jensen* and here, that a sufficient identity of interest did not exist, none of those cases indicated that *Jensen* was wrongly decided. Further, the Wisconsin Supreme Court has discussed the *Jensen* court's finding of a sufficient identity of interest between the party and the nonparty without expressing disagreement. *See Paige K.B.*, 226 Wis. 2d at 228. Thus, I continue to believe that *Jensen* accurately reflects how the Wisconsin Supreme Court would apply the "sufficient identity of interest" test.

The plaintiffs' third argument is that I improperly found sufficient identity of interest based solely on the plaintiffs' choice of the same counsel. However, representation by the same counsel was only one of the reasons I gave for finding an identity of interest.

20

The others were that "the plaintiffs were prosecuting claims against the same defendants under identical legal theories in front of the same court and the same judge, who had been managing all cases jointly." *Burton*, 2022 WL 623895, at *12. The plaintiffs also suggest that I "apparently would have required counsel for the first-wave Plaintiffs to compromise the best interests of those individual Plaintiffs for the—potential but uncertain—best interest of subsequent Plaintiffs in other cases." (Br. in Supp. of Mot. to Reconsider at 21.) Initially, I note that the ruling given preclusive effect was rendered at summary judgment on the claims of the second-wave plaintiffs rather than the first-wave plaintiffs. But more importantly, the plaintiffs have not identified any way in which the best interests of the plaintiffs in the earlier waves diverged from the interests of those in the later waves on the question of whether the defendants had a duty to warn. Indeed, it was in the best interests of all plaintiffs in all waves to establish that the defendants had such a duty. This, again, is one of the reasons why I found that all plaintiffs had a sufficient identity of interest.

The plaintiffs also contend that, in the second step of the analysis, I reached the wrong conclusion when applying each of the fundamental-fairness factors. The first factor asks whether the party against whom preclusion is sought could have obtained review of the judgment in the initial action. *Rille*, 300 Wis. 2d at 29. In my last order, I noted that this factor favored the plaintiffs because they could not, as a matter of law, have forced the second-wave plaintiffs to appeal my summary-judgment ruling regarding the absence of a duty to warn. However, I described this factor as only "nominally" favoring the later plaintiffs. *Burton*, 2022 WL 623895, at *12. I said this because the plaintiffs were aligned in interest and had been coordinating their litigation efforts, and so if plaintiffs' counsel

21

saw grounds for appealing that ruling, an appeal would have been filed and the arguments made on appeal would have benefitted all plaintiffs equally. Thus, I concluded (and continue to think) that even though the later plaintiffs could not have compelled the second-wave plaintiffs to file an appeal, this factor did not strongly weigh in favor of finding the application of issue preclusion fundamentally unfair.

The second fairness factor asks whether the question is one of law that involves two distinct claims or intervening contextual shifts in the law. *Rille*, 300 Wis. 2d at 29. My ruling that the defendants were entitled to summary judgment on the issue of negligent failure to warn answered a question of law. *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir. 1993). However, the question arises in the context of identical rather than distinct claims: the earlier and later claims are all personal-injury claims seeking to impose a duty to warn on manufacturers of white lead carbonate.

The plaintiffs contend that there has been an intervening contextual shift in the law, namely, the Seventh Circuit's decision in the first-wave cases. However, that decision did not change the legal principles governing claims for negligent failure to warn in Wisconsin. The plaintiffs do not dispute this point. Instead, they point out that the Seventh Circuit's determination of a different issue—that the existence of a duty to warn for purposes of strict liability is determined by the same facts that determine whether such a duty exists for purposes of negligence—makes establishing a duty to warn for negligence more important. However, the second fairness factor is concerned with changes in the law governing the issue sought to be given preclusive effect, not other changes in the legal

landscape that might affect the party's incentive to litigate the issue.[8] As a comment to the Restatement (Second) of Judgments § 28 explains,[9] the purpose of this factor is to address the inequitable administration of the laws that might occur if the precluded party's rights were determined by legal rules that no longer apply to similarly situated parties. Restatement (Second) of Judgments § 28 cmt. c (Am. Law Inst. 1982). Here, such an inequitable administration of the laws cannot occur because the law governing claims for negligent failure to warn has not changed and therefore the plaintiffs' rights are being determined by the same legal rules that would apply to any other party who litigates the question today. Thus, the second fairness factor does not counsel against application of issue preclusion.[10]

The third fairness factor asks whether significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue. *Rille*, 300 Wis. 2d at 29. Here, the plaintiffs argue that the answer is yes because the plaintiffs did not in the second-wave cases contest the issue of the existence of a duty to warn for negligence or litigate that issue as extensively as they wish to do so now. But

---

[8] A party's incentive to litigate is addressed under the fifth fairness factor. I discuss that factor below.

[9] The Wisconsin Supreme Court drew the five fairness factors from this section of the Restatement. *See Rille*, 300 Wis. 2d at 29 n.28.

[10] In *Jensen*, the Wisconsin Court of Appeals, when applying the second fairness factor, noted that "there have been no intervening changes in the law of negligence which would suggest a different strategy in litigating that issue or a different jury answer." 204 Wis. 2d at 238–39. I do not view the court's use of the word "strategy" to mean that any intervening legal decision that might affect a party's incentive to litigate a question will satisfy the second element. Rather, the court was merely noting that there had not been a change in the law of negligence—which was the issue on which preclusion was sought—that would have affected how the plaintiff litigated the negligence issue.

the plaintiffs misunderstand the purpose of the third factor. That factor "does not explore how well the parties litigated in the first proceeding or the extent of their efforts." *Id.* at 38. Instead, it "examines the procedural aspects of the first proceeding, such as the ability to conduct discovery and introduce evidence, the availability of counsel, and the relative burdens of proof." *Id.* The summary-judgment proceedings in the second wave were as extensive as they would be now. The plaintiffs in the second wave were able to conduct whatever discovery they thought they needed, were free to introduce any evidence that they had (including evidence concerning consumer knowledge of the dangers of lead dust), were represented by competent counsel, and had the same burden of proof. Thus, the third factor clearly favors application of issue preclusion.

The fourth factor asks whether the burden of persuasion has shifted. *Id.* at 29. Clearly the answer is no: the burden of persuasion has always rested with the plaintiffs and has been the preponderance of the evidence. The plaintiffs argue that the Seventh Circuit's decision in the first-wave cases changed the burden of persuasion relating to strict liability, but that is incorrect. The court instead held that whether a duty to warn existed for purposes of strict liability turned on the defendants' reasonable beliefs about the knowledge of consumers in the position of the plaintiffs and their caregivers. *Burton*, 994 F.3d at 821–23. That holding did not affect the burden of persuasion for any claim. Thus, the fourth factor favors the application of issue preclusion.

The fifth factor asks whether there are matters of public policy and individual circumstances involved that would render the application of issue preclusion fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action. *Rille*, 300 Wis. 2d at 29. Here, the plaintiffs contend that

24

two individual circumstances make the application of issue preclusion fundamentally unfair. First, they contend that I misled the later plaintiffs into thinking that they would be free to relitigate common questions of law or fact because I granted and denied various motions to consolidate claims or issues over the life of this litigation. The plaintiffs argue that, unless I formally consolidated the claims of all plaintiffs with respect to a common question, the plaintiffs who did not litigate the issue in their own names should not be bound by the answer given in the earlier proceeding. However, by the time the second-wave plaintiffs filed their brief in opposition to the defendants' motions for summary judgment on the duty-to-warn issue, I had put all plaintiffs on notice that decisions on common questions of law or fact would have issue preclusive effect across all claims. That notice came in the form of my decision on American Cyanamid's motion to dismiss for lack of personal jurisdiction, which I issued in November 2019. In that decision, I determined that all plaintiffs were bound by the first-wave plaintiffs' litigation of American Cyanamid's personal-jurisdiction defense, which was a common issue among all cases. *See Allen v. American Cyanamid Co.*, No. 11-CV-55, 2019 WL 5863979 (E.D. Wis. Nov. 8, 2019).

Moreover, even if it could be said that I misled the later plaintiffs into thinking that they could relitigate common questions that had been settled earlier in the litigation, the later plaintiffs do not explain what they would have done differently had they known that my decision at summary judgment in the second wave regarding the duty to warn would be binding on them. In other words, the plaintiffs do not explain what they would have done differently had I consolidated all cases for purposes of resolving the defendants' motions for summary judgment in the second wave prior to March 2021. At that time, the

25

Seventh Circuit had not decided the appeal in the first-wave cases, so the consolidated plaintiffs could not have tailored their arguments to that decision and would not have known that the court would hold that the existence of a duty to warn for both negligence and strict liability had to be determined with reference to consumers in the position of the plaintiffs and their caregivers. Thus, it appears that, even if I had formally consolidated all claims for purposes of summary judgment, the later plaintiffs would have made the same arguments and produced the same evidence as the second-wave plaintiffs. Again, all plaintiffs were represented by the same counsel, and counsel would have had no reason to make different arguments for different plaintiffs with respect to this common question. Accordingly, my failure to formally consolidate is not an individual circumstance that renders the application of issue preclusion fundamentally unfair.

The other individual circumstance emphasized by the plaintiffs is the Seventh Circuit's intervening decision on the claims of the first-wave plaintiffs. The later plaintiffs emphasize that this decision has caused them to rethink their case strategy and has increased the importance of establishing that the defendants had a duty to warn consumers in the position of the plaintiffs and their caregivers about the hidden dangers of lead paint. The plaintiffs now believe that the only way to establish such a duty is to produce evidence showing that ordinary consumers were not aware of the dangers of lead dust, even if they were aware of the dangers of lead chips. For this reason, the later plaintiffs advance arguments and evidence about lead dust that were not advanced by the plaintiffs in the first and second waves.

I agree that, in light of the Seventh Circuit's decision on appeal, the remaining plaintiffs have an increased incentive to litigate the duty-to-warn issue. However, this does

26

not mean that the second-wave plaintiffs had an *inadequate* incentive to litigate that issue, which is what the fifth fairness factor focuses on. *Rille*, 300 Wis. 2d at 29. Even before the Seventh Circuit decided the appeal, the existence of a duty to warn for purposes of a negligence claim was an important issue. The plaintiffs' claims for negligent failure to warn depended on it, and the plaintiffs were not guaranteed a victory on their other negligence claims or on their strict-liability claims. Even though the first-wave plaintiffs had succeeded on those claims, there was no guarantee that the Seventh Circuit would uphold the result on appeal. Thus, the plaintiffs had the incentive and opportunity to demonstrate, at the time of summary judgment in the second-wave cases, that a reasonable jury could find that the defendants had reason to believe that consumers in the position of the plaintiffs or their caregivers were unaware of the dangers of lead dust, even if those same consumers were aware of the dangers of lead paint generally or the dangers of lead chips. I therefore cannot say that the plaintiffs had an "inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action." *Id.*

Finally, I point out that, in applying the individual fairness factors, I have not lost sight of my "overarching task," which is "to make a holistic, discretionary determination regarding fundamental fairness." *Aldrich v. Labor & Indus. Review Comm'n*, 341 Wis.2d 36, 86 (2012). Ultimately, the only reason to permit relitigation of the duty-to-warn issue would be to allow the later plaintiffs to exploit their knowledge of how the appeal in the first-wave cases turned out. But I do not believe that fundamental fairness or due process requires that they have that opportunity. If fairness entitled a party to relitigate issues once he or she learns how other issues in the case will be resolved on appeal, then even the plaintiffs in the first wave should be entitled to relitigate their negligence and strict-liability

27

claims, including against parties, such as Sherwin-Williams, to whom the appellate court directed entry of judgment as a matter of law. But, of course, principles of finality and efficiency prevent such relitigation.

Overall, I conclude that fairness requires that all litigants who were part of this coordinated litigation be treated the same. It would be anomalous to answer common questions of law or fact differently for different plaintiffs pursuing identical claims within the same litigation. Moreover, the principles of efficiency that supported the creation of this coordinated litigation must be weighed in the balance, and those principles counsel against reopening settled issues. Accordingly, I will not reconsider my grant of summary judgment to the defendants on the claims of the remaining *Allen* and *Trammell* plaintiffs and the *Gibson* and *Valoe* plaintiffs.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that DuPont's motion to amend or correct a misstatement pursuant to Federal Rule of Civil Procedure 60(a) (ECF No. 1868 in 07-C-0303, ECF No. 1125 in Case No. 07-C-0441, and ECF No. 1051 in Case No. 10-C-0075) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) (ECF No. 1880 in Case No. 07-C-0303, ECF No. 1136 in Case No. 07-C-0441, ECF No. 1062 in Case No. 10-C-0075, ECF No. 493 in Case No. 07-C-0864, ECF No. 1149 in Case No. 11-C-0055, ECF No. 340 in Case No. 11-C-0425, and ECF No. 818 in Case No. 14-C-1423) is **DENIED**.

28

Dated at Milwaukee, Wisconsin, this 16th day of August, 2022.

/s/Lynn Adelman
LYNN ADELMAN
United States District Judge

29